Thank you. Judith Meisner, representing Sean Ahern. Mr. Ahern is asking this court to authorize the filing of a successive petition for post-conviction relief in the district court challenging his career offender sentence and his conviction under 924C. And going to the gatekeeper standard that this court is to use, I think that Evans-Garcia does set out some standards for this court to employ. The court said that a prima facie showing is a sufficient showing of possible merit to warrant fuller exploration by the district court. Okay, so help us. We use the term sufficient. It gives us a great deal of discretion. Judge Selya has been pushing for an articulation of what sufficiency means. You're an experienced defense lawyer. Has your community formulated a better statement of that than mere sufficiency? I am not familiar with any defense bar definition, but I think that if you look at another part of the discussion in Evans-Garcia where the court said the circuit court should deny certification where it's clear as a matter of law and without the need to consider contested evidence that petitioner's identified constitutional rule doesn't apply to petitioner's situation. So if you flip that over, that if there is, if the identified constitutional rule does appear to apply, then that should be sufficient. It's not a merit showing, and this court also in Evans-Garcia explained why there's good reason to refrain from a full inquiry even on a purely legal issue such as retroactivity because he said that this court does not generally rule on questions whether a fact or law until the district court has had an opportunity to weigh in and that it also affords the litigants the opportunity to more finely hone their arguments and give this court a better predicate for making a decision on the merits. But you see the government is saying that you can't simply flip over that second sentence because a sufficient rule in the government's view as I understand it at a minimum requires a new rule that's on point so that if there may be factual differences in a case which make it arguable whether that rule applies to a particular case, that wouldn't defeat a second or successive, all right, but if there are legal obstacles to the application of the new rule, again as I understand the government's position, all right, then the new rule can't be, can't ground a second or successive application. So they say that unlike Evans-Garcia, we're not dealing here with the same statute, right. What you want is you want us to take the principle of Johnson and apply that principle to a different statute which has some of the characteristics of the statute found unconstitutional in Johnson but has some different characteristics too. And the government says that type of analysis, some the same, some different, isn't the sort of analysis which ought to be made on a second or successive, at a minimum you've got to know that the rule applies. Well I think that the question, first of all in this case we are talking about in part the career offender provision which is precisely the same provision. Well except that there is a very significant anomaly because it's a guideline provision and a guideline, so that the question that was present, that was at the root of Johnson, that is that the defendant's maximum sentence, that the defendant's sentence was elevated, his maximum sentence was elevated by the application of the provision, doesn't apply here at all. The defendant's statutory maximum in your case was completely unaffected by the career offender guideline or by what was then thought to be its mandatory nature. Statutory maximum is the same now as it was then. What was affected is the calculation of the sentence and that's a different argument. The government has said therefore Johnson is procedural as applied to a sentencing guideline case. But it also affects the new rule argument because it's difficult, to my mind at least, to take a rule that invalidates a statute and say that that's the same thing as the Well addressing the guidelines question, I think that if you look at Pew and Molina-Martinez that they show that the guidelines do have the anchoring effect of the statute, that they are, the guidelines are promulgated pursuant to a statute. That's true. Congress has the, reviews them, they don't go into effect until Congress makes a decision. The, in Pew and in Molina-Martinez, the court repeatedly emphasized that they are the lodestar, the framework for sentencing. They anchor the district court's discretion. When you vary from the guidelines, you have to provide greater justification. Just recently in Montero, Montero, this court said that the greater the deviation from the guidelines, the greater the burden of justification and that the burden of adequate explanation You're moving from a system in which the guidelines were mandatory. This sentence was a mandatory guideline and so you have a stronger argument there. But some of the arguments you're making, greater justification, so on and so forth, have to do with a different case than this. This is a mandatory case. In that sense, it's closer to a statute. But when the guidelines were not mandatory, it seems to me the argument is a bit weaker. I'm just pointing out that even in an advisory guideline system, the Yes, but you don't need to go there on this case. No, you're right, Your Honor. But you do, respectfully, even under the mandatory system, you still have to face, for example, if the judge found that the criminal history over-represents or under-represents. So there was even then some discretion, right? So how do you address that? Well, I think you can look at Montgomery v. Louisiana, which was addressing the retroactivity of Miller. Life without parole, mandatory life without parole for juveniles was unconstitutional. That didn't mean, though, that the court could not impose a life without parole sentence after considering the factors that the Supreme Court said had to be considered. And in Montgomery, the court held that Miller was retroactive, notwithstanding the fact that there was no automatic preclusion. But there's a difference there, because in the Montgomery situation, because of the decision in Miller, life without parole was constitutionally impermissible for at least some class of offenders. Here, a sentence up to 20 years is not for bank robbery, is not constitutionally impermissible for any class of offenders, even if Johnson applies to the career offender provision in the Guideline. So to my mind, it's a qualitatively different case. Well, again, we go back to particularly pre-Booker, the mandatory nature of the Guidelines and the very limited... But we've said that Booker isn't to be applied retroactively. So it seems to me that that cuts against you, that Booker doesn't help you here. If Booker error can't be applied retroactively, it seems to me that weakens your claim that the mandatory nature of the Guidelines somehow helps you out here. We're not arguing about Booker error. I'm saying that if the Guidelines are... As I understand your position, you are saying that because the statutory limits do not change, that Johnson doesn't apply to the Guidelines. I'm not saying Johnson doesn't apply. I'm saying that there's a question, a substantial question, as to whether Johnson applies, and the existence of a substantial question in and of itself may very well be enough to defeat a second and successive application. This would be a completely different case if we had this problem on direct review or even on a first habeas petition. Well, again, the court would be... If the court allows the filing of a second petition, the district court then rules on these issues, and there will then be a direct appeal from that decision. So the court will be reviewing it on direct review. Yeah, but as the government said, this is all a gradient, and the theory of this statutory scheme is that second and successive is not to be granted with any liberality. Direct review is one thing. Review by habeas is a little... You have to jump through some hoops to get that, but then it's got to be even harder to get a second and successive. That's not meant to be available routinely to criminal defendants. No, but I believe that the criteria for it are whether there is a prima facie showing that the petition contains a new rule of constitutional law, and we are defining the rule in Johnson as that the residual clause language of the ACCA is unconstitutionally vague because it requires the court to look at the ordinary case and judge whether that abstraction presents a serious potential risk of physical injury, and then you have how much risk is required for the ordinary case. You have that double helping of indeterminacy. That's the rule of Johnson is that that double helping of indeterminacy means that the provision, that the residual clause of the ACCA is unconstitutionally vague. Applying that rule, that new rule, which Welch said was a new rule, and a substantive rule to the career offender provision, which has the exact same language as the ACCA residual clause, is not expanding the application, is not expanding the new rule in any way. It's just applying that rule to the exact same language with a different statutory provision. With respect, that misses the point of the government's argument, at least as I understand it, which is that even if everything you've said is so, that when you apply Johnson to the career offender provision of the sentencing guideline, that isn't a substantive application of Johnson. It's procedural because all it does is go to the correctness of the sentence. In this case, it has no effect at all on the statutory maximum or minimum. The statutory sentencing parameters are the same. The defendant may receive exactly the same or even a higher sentence if he's resentenced. It does not have the substantive characteristic that Johnson has in its own milieu. Well, I believe that it does. Welch says you look at the function of the rule and to see what it does. And here, what the rule does in the career offender context is it narrows the scope. It alters the substantive reach of the career offender provision. It excludes from career offender status people who have committed, a class of people who have committed a number of crimes. That's true, but none of that affects the statutory maximum to which the defendant is exposed. It goes to the procedure for the sentencing and may give him a better shot at a lower sentence, no question. But that's procedural. I'm playing the devil's advocate. No, I understand. This is the argument that the government is making. That's procedural in just the same way as the guideline error in Molina Martinez, which the Supreme Court was in great pains to say was procedural. But Montgomery says that you can have a substantive rule that has a procedural component to it. Yeah, that's true. If you look at Welch and Montgomery together, I suggest that that shows that the Johnson rule is a substantive rule as applied to the career offender guidelines. And that the petitioner has made sufficient showing to warrant the authorization to file a second or successive petition. Thank you. Good morning. Seth Avery for the United States. I'd like to spend most of my time on the guideline issue, but let me just point out a feature of the 920C aspect of my case that's different than the first case that we heard. The predicate in this case is federal bank robbery. Under Evans-Garcia, it's clear that if an advocated new rule does not apply to the case before the court, then the successive request should be denied. I've cited much authority for the proposition that the bank robbery statute is a crime of violence under the elements clause of 920C, not the residual clause. Johnson has no effect on the elements clause. That's what all the cases cited in my papers point out. There's been no case cited that I'm aware of by the other side to suggest the opposite. So in my view, you don't reach. But the district court didn't resolve that question, did it? Didn't it, in fact, rely on the residual clause? In this case? Yes. I don't recall if it did or it didn't, but I don't think as a matter of law that would in any way preclude this court from saying, I mean, many statutes can be under both. So let's assume for a moment we put the residual clause aside. You look at it now and say, but it also falls under the elements clause, as all of these cases say. And there's no case I'm aware of that says something else. You can say we don't get to the Johnson problem. As a matter of law, regardless of the fact that the district court did not consider this situation. Sure. I think that's a usual thing we do. We affirm on any ground. We see the legal answer here is that the elements clause applies, that there's lots of case law that says it. There's no case law I'm aware of that says the opposite, that the elements clause doesn't cover bank robbery. And that is a feature of my case that's different than before that I wanted to point out. Should all of those considerations apply in a quick-look certificate situation like this? Well, that's what they did in Evans-Garcia. In Evans-Garcia, they said that the rule of Miller did not apply to one of the defendants, but it applied to the other. And some of the things you've been asked to consider within the 30-day success of it are much more complicated than this one. Because this one has lots of decided case law. You're being asked to decide all sorts of things on which there's very little law. I'm pointing you to something where there is a strong body of law saying federal robbery falls under the elements clause. It would also fall under the residual clause as it exists, but it falls under the elements clause. That's what I wanted to point out. But I really want to spend my time on, I think, the more difficult question here of the guidelines. So what I want to point out, I think, is that the successive argument made requires this court to make essentially two legal moves. Move one, the rule in Johnson, or the principle in Johnson, Judge Selle used the word principle, and I think that's a good one. The principle in Johnson extends to cover the guidelines. And there's an important legal issue there, which is does due process cover the guidelines? And this court has twice reserved that question since Johnson. And so Rivera and Castro have asked us this question. We're not going to decide that. Why? Because it pointed out a circuit split. The 11th Circuit has held it doesn't. The due process clause doesn't extend to the guidelines. I think the 8th and the 10th Circuit have held that it does. It's a difficult question. The government's position, candidly, on an initial or a direct appeal is we agree with the 8th and 10th Circuits. We agree that Johnson should be extended. But that's a question for direct appeal or an initial 2255 for the reason my colleague talked about earlier. It's not an appropriate consideration for a successive. It's a difficult legal question. You will have no obligation to accept the government concession. You have to make an independent determination. And there's a well-thought-out opinion from the 11th Circuit that says otherwise. So that's a difficult question. And it's not one taking the 30-day requirement from Tyler that you have to decide these matters. That's not the kind of thing that courts of appeals typically decide in 30 days. In fact, you get 30 days to write a brief. So that's a very challenging question. And to me, that suggests Congress wasn't thinking that that kind of thing gets resolved on a second or successive. It gets resolved in an initial. It gets resolved in a direct appeal. I agree with my colleague that then when it does get resolved, a new statute of limitations gets triggered because now you have a new rule. Then you will have taken the principle of Johnson and made a new rule in the guideline context, and a defendant should then get a year to bring their 2255 to challenge it. And my colleague cited Inouye Garner. I point out a decision from this court in Cuevas that I didn't cite, but I can file a 20HA letter, that was filed after Blakely, a successive, was filed saying, hey, Blakely applies to my federal sentencing. And this court said, we're not going to grant you a successive. We don't know that. Blakely doesn't make that clear. Now, it ended up being so later when Booker was decided, but at that point in time, this court said, no successive because it's not clear that Blakely extends to your case. That seems sound because that's the point of the successive is to keep those to the side while we figure out through the normal litigation course of direct appeals and initial 2255s what the law is. Once we know what the law is, then we look to all the old cases and say, now that we know what the law is and we know you benefit from it, we give you now the benefit of those rules that now we know apply to you. Let me turn to retroactivity, and let me talk about prima facie case for a second. Prima facie case, in Evans-Garcia, you talked about the sufficient, used the word sufficient. The next sentence says, is it reasonably likely that the stringent requirements of the successive gatekeeping mechanism have been met? Is it reasonably likely? Well, again, all legal words have play in the joints, but that's talking about, have you shown is it more probable than not that this standard has been met? So what is the standard? And let's talk about retroactivity. The standard for retroactivity is, has the Supreme Court made it retroactive? So is it reasonably likely, not that it is retroactive, is it reasonably likely that the Supreme Court has made it retroactive already? And that can happen in one of two ways, as we know from Tyler v. Cain. It can happen most directly by an explicit holding. Well, we don't have that. I don't think anybody says there's an explicit holding that says that the unconstitutionality of the guidelines has been retroactively held. I think the argument is made that you have a line of precedence that dictated. And I think that argument is flawed. That argument relies on the notion of substantive rules, and substantive rules as it applies to punishments. And there are two cases from the Supreme Court that deal with substantive rules that apply to punishments. One is Welsh itself, and Welsh held that the ACCA, striking the residual clause of the ACCA is substantive. Why? Because it reduced the punishment that Congress can impose. Someone found to be guilty as an ACCA residual clause person is now not guilty. That is a constitutionally void provision of a federal statute. They are not guilty of being an ACCA, and that has real and automatic consequences. Their sentence, by definition, will have to drop at a minimum from 15 to 10. Every case. So that's substantive. Justice Harlan, Second Justice Harlan, when he defined this said, rules are substantive when the criminal justice process has rested at a place that it should never have found repose. Well, it shouldn't have found repose at 15 years because that's unconstitutional. That's clearly substantive. Montgomery, clearly substantive. What they say in Montgomery is, and Judge Sully, I think you got this exactly right, there's a class of people, children who cannot be rehabilitated, who can never, under the Eighth Amendment, receive life without parole. That class of people can never be given that punishment. So if a statute in the state says that's the punishment, it's unconstitutional as to all of those juvenile offenders who can be rehabilitated. That's also substantive. What do we have here, though? We have the guidelines. And Judge Sully, I think, pointed out the key feature. The guidelines are an overlay to a statutory scheme that sets minimums and maximums. And the sentence, no matter what, must fall within the statutory minimum or maximum. And nobody says that if Johnson extends to the guidelines, that affects the statutory minimum or maximum. So what the guidelines do is they guide discretion. And Judge Litz says no doubt they guide discretion more when they were mandatory than when they were advisory. There's no question about that. But they nevertheless have a role of guiding a judge's discretion. And that's different in kind than what we're talking about with Welsh and what we're talking about with Montgomery. But they quite severely restricted that. There's no doubt, although there's no doubt. So let me start with there's no doubt. But as preparation for this, I reread Coon v. United States, which talks about what district courts did in the mandatory guideline regime. And it says that there are certain forbidden categories of departures. But it, again, says that every sentencing is a unique individual experience. And district judges were supposed to think about anything that took the case out of the heartland. And I think, Judge Howard, you mentioned earlier that 4A departures in this context are very possible. I mean, they're contemplated. Does the criminal history accurately reflect the person's record? But can't you define the category here as those in which there is no departure possible or there hasn't been an over- or under-representation? Couldn't someone reasonably define the category that way for purposes of a certificate? As I was reading, I read the oral argument in Welsh. And the way Justice Sotomayor thought about substantive rules was to say, is it possible that you could get the same result in your case after getting relief? So I think what you're saying, and I thought a lot about this, I think what you're saying is this stuff's really important to how the case got resolved. The way the guidelines worked was a really critical consideration, and you're right about that. And that's true of a lot of rules that we easily say are procedural. We leave out important pieces of evidence that never should have come in, come in and a person gets convicted. That's really important, but we have no problem saying that's procedural. So I don't think it's about the importance of what happened. It's whether something has been taken beyond the power of Congress, the criminal law-making authority to impose. And that's what I think Welsh and Montgomery stand for, and that's what makes this different. No judge is prevented on remand or after 2255 relief from imposing the same sentence. You could have the same result in this case even if 2255 relief is granted and we hold a resentencing. That's the fundamental difference. Even if that's in a make-believe world? Well, when we go back under, I think, Pepper, we're going to use advisory guidelines, first of all. And in advisory guidelines, I think it's quite easy to imagine a district judge saying, well, this crime's under the residual clause, but you're still a really violent offender who did some really bad things, and I am going to substantially upwardly depart, upwardly vary under 3553 back to where we were. I think that's a, I'm not going to say likely because I have no idea, but that's completely possible under the regime that will take place here. So you can end up with the same result in this case. This person can end up with the exact same sentence once we're done with all of this as they have now. That's the difference between this case and Welsh. That will never happen in an ACCA. They are going to get five years off their sentence. If you are a juvenile who can demonstrate they can be reformed, you are not going to get life without parole. Nobody can say about any of these defendants that they will not get the same sentence. They may, and that's the important difference. And there's language in Montgomery exactly to that point, that if the government, by marshalling its resources, can continue to defend the judgment or the punishment, that makes it procedural. And that, to me, is the key distinction. Should it go back? Is it on the basis of the record that was created in the district court the first time around, i.e., the guidelines calculation is the same as it was originally? No one can introduce any new arguments. Say the government has found out in the interim that the sentence perhaps could have been enhanced more because of new information. I believe Pepper controls that. I believe, and I might be wrong about this, but I am pretty sure that the holding in Pepper was on a remand under advisory guidelines. The defendant was allowed to introduce his excellent behavior in prison as a way to get a further variance. And I believe the Supreme Court said that was acceptable. Yes, but I asked in part about the government. So can the government, well, I'd have to think about whether that principle shouldn't apply to the government. Is it simply a question of leniency, or does it work both ways? He's caused a lot of trouble since he's been in prison. We think that should be. We certainly made those arguments in 3582C where we said you don't get the benefit of the sentencing reduction because you've been really not behaving in prison. I know we did that, and that was an acceptable argument to make. I'm happy to answer questions. Thank you.